UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KRISTEN J. BOCKENO,

                Plaintiff,

v.                                                  5:14-CV-0365
                                                  (GTS)
COMM'R OF SOC. SEC.,

                Defendant.
_____

APPEARANCES:                                       OF COUNSEL:

OLINSKY LAW GROUP                    HOWARD D. OLINSKY, ESQ.
 Counsel for Plaintiff
300 S. State St., Ste. 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.         PETER W. JEWETT, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

GLENN T. SUDDABY, United States District Judge

## **DECISION and ORDER**

Currently before the Court, in this Social Security action filed by Kristen J. Bockeno ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 11, 12.) For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on November 28, 1972. (T. 159.) She completed the seventh grade. (T. 183.) Generally, Plaintiff's alleged disability consists of depression, anxiety, and history of heart attack. (T. 182.) Her alleged disability onset date is June 6, 2011. (*Id.*) Her date last insured is March 31, 2015. (T. 54.) She previously worked as a cashier. (T. 233.)

### B. Procedural History

On June 6, 2011, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 54.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On September 11, 2012, Plaintiff appeared before the ALJ, Scott M. Staller. (T. 36-52.) On October 9, 2012, ALJ Staller issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 16-35.) On February 12, 2014, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 19-35.) First, the ALJ found that Plaintiff met the insured status requirements through March 31, 2015 and Plaintiff had not engaged in substantial gainful activity since June 6, 2011. (T. 21.) Second, the ALJ found that Plaintiff had the severe impairments of coronary artery disease status post old myocardial infarction,

major depressive disorder, an anxiety disorder, a histrionic personality disorder, and a panic disorder without agoraphobia. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 22-23.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following additional limitations:

> [Plaintiff] could occasionally climb, balance, stoop, kneel, crouch, or crawl. [Plaintiff] would be able to understand, remember, and carry out simple instructions as well as make judgments on simple work related decisions. She should have only brief, infrequent, and superficial contact with the public and only occasional contact with coworkers and supervisors. She would be limited to a job with only occasional decision-making and only occasional changes in the work setting. [Plaintiff] could maintain attention and concentration for two-hour segments over an eight-hour period and complete a normal workweek without excessive interruptions from psychologically or physically based symptoms.

(T. 24.)[1] Fifth, the ALJ determined that Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 29-30.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes three separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ erred in rejecting the opinion of Stephen F. Coleman, Psy.D. (Dkt. No. 11 at 14-20 [Pl.'s Mem. of Law].) Second, Plaintiff argues

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

3

the ALJ's credibility finding was unsupported by substantial evidence. (*Id.* at 20-22.) Third, and lastly, Plaintiff argues the step five determination was unsupported by substantial evidence because the ALJ relied upon an incomplete hypothetical question asked to the vocational expert ("VE"). (*Id.* at 22-23.)

### B. Defendant's Arguments

In response, Defendant makes three arguments. First, Defendant argues the ALJ properly discounted Dr. Coleman's opinion. (Dkt. No. 12 at 4-7 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ's credibility determination was supported by substantial evidence. (*Id.* at 8-10.) Third, and lastly, Defendant argues Plaintiff was capable of performing other work in the national economy. (*Id.* at 10-11.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

5

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV. ANALYSIS

### A. Whether the ALJ Properly Assessed Dr. Coleman's Opinion.

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 12 at 4-7 [Def.'s Mem. of Law].) The Court adds the following analysis.

In making a determination of the proper weight to afford a medical opinion the ALJ should consider the following factors: 1) the examining relationship, 2) the treatment relationship, 3) the supportability of the opinion, 4) the consistency of the opinion with the record as a whole, 5) any specialization of the source, 6) and "other factors." 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

Dr. Coleman met with Plaintiff on August 6, 2012 for approximately an hour for the purpose of a psychological evaluation per Plaintiff's request. (T. 641.) Dr. Coleman stated he reviewed her medical record, but he was not specific as to which records he

reviewed. (*Id.*) On September 10, 2012, he completed a medical source statement. (T. 637-640.) Therein, Dr. Coleman opined Plaintiff was "seriously limited, but not precluded" in her ability to: maintain attention for two hour segments; maintain a regular attendance and be punctual; work in coordination with or proximity to others without being unduly distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; deal with normal work stress; interact appropriately with the general public; travel in unfamiliar places; and use public transportation. (T. 638-639.) He further observed Plaintiff was "limited but satisfactory" in her ability to: remember work-like procedure; understand and remember very short and simple instructions; sustain an ordinary routine; make simple work-related decisions; accept instructions and respond appropriately to criticism from supervisors; get alone with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; and maintain socially appropriate behavior. (*Id.*) Dr. Coleman opined Plaintiff would be "off-task" 20 percent of the time during an eight hour workday and would miss more than four days per month due to her impairments or treatment. (T. 639.)

Plaintiff argues the ALJ's rational for affording Dr. Coleman's opinion "little weight" was improper. (Dkt. No. 11 at 16 [Pl.'s Mem. of Law].) Specifically, Plaintiff argues the ALJ's logic was "hypocritical," the ALJ improperly analyzed the opinions of other consultative examiners, and the ALJ improperly discredited the opinion because it was based on subjective complaints. (*Id.* at 16-20.)

Plaintiff argues the ALJ was "hypocritical" in providing Dr. Coleman's opinion less weight due to his role as a consultative examiner and then providing "great weight" to

7

consultative examiner Jeanne Shapiro, Ph.D.; however, the ALJ's analysis of the medical opinions in the record was thorough, straightforward, and in accordance with the Regulations.[2]

In affording Dr. Coleman's opinion "little weight" the ALJ raised concerns about the context of Dr. Coleman's opinion, namely because Dr. Coleman was retained by Plaintiff's counsel to provide evidence. (T. 28.) However, after making note of the context of Dr. Coleman's report, the ALJ indicated that he did not question the validity of Dr. Coleman's opinion, stating his opinion was "certainly legitimate" and "deserv[ed] due consideration." (*Id.*) To be sure, "the mere fact that a medical report is provided at the request of counsel or, more broadly, the purpose for which an opinion is provided, is not a legitimate basis for evaluating the reliability of a report." *Gunter v. Comm'r of Soc. Sec.,* 361 F. App'x 197, n.2 (2d Cir. 2010) (*quoting Reddick v. Chater,* 157 F.3d 715, 726 (9th Cir.1998)). Although the ALJ expressed concerns about the context of the report, he went on to indicate that Dr. Coleman's report was legitimate and proceeded to properly evaluated it according to the factors in the Regulation as discussed *infra*. Further, under the Regulations, the ALJ may take into consideration the nature of a doctor's treatment relationship with a plaintiff. *See* 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2).

The ALJ also expressed concern that Dr. Coleman's evaluation was based primarily on Plaintiff's subjective complaints. (*Id.*) To be sure, a doctor's reliance on subjective complaints does not necessarily undermine his opinion of the plaintiff's functional limitations. *See Green-Younger v. Barnhart*, 335 F.3d 99 (2nd Cir. 2003).

---

[2] Of note, the ALJ afforded consultative examiner Kalyani Ganesh, M.D.'s opinion that Plaintiff had no gross physical limitations "less weight," reasoning that the objective medical record provided for more physical restrictions, thus dampening Plaintiff's "hypocrisy" argument.

However, this was but one factor in the ALJ's reasoning. The ALJ properly evaluated Dr. Coleman's functional limitations under the factors outlined in the Regulations, ultimately concluding that his opinion was inconsistent with the objective medical evidence in the record.

In accordance with the Regulations, the ALJ asserted that Dr. Coleman's opinion was not supported by the observations of Plaintiff's treating mental health providers and Dr. Shapiro. For example, records from 2009 through 2012 indicate Plaintiff received her primary mental health treatment through St. Joseph's Hospital Health Center. Although Plaintiff's symptoms of depression and anxiety were often observed, her treating mental health providers noted her mental health status examinations were within normal limits. (T. 289, 307, 313, 315, 317, 319, 321, 323, 325-326, 327, 329, 574, 576, 580, 582, 584, 586, 589, 591, 593, 595, 597, 599, 601, and 606.)[3] Dr. Shapiro's observations during her mental status examination of Plaintiff mirror the normal results noted by Plaintiff's treating providers. (T. 337-338.) Dr. Shapiro and treating mental health providers' observations do not support Dr. Coleman's more extreme limitations. (T. 637.) Therefore, substantial evidence supports the ALJ determination that Dr. Coleman's mental functional limitations were inconsistent with other objective medical evidence in the record.

Further, the ALJ did not outright reject Dr. Coleman's opinion, but afforded his opinion "little weight." The ALJ's RFC determination includes non-exertional mental limitations, some of which are consistent with the limitations imposed by Dr. Coleman and supported by other medical evidence in the record. For example, the ALJ

---

[3] Mental Status exams observed Plaintiff's: demeanor/behavior; eye contact; appearance; level of consciousness; orientation; attention/concentration; memory; speech (tone, rate, volume, clarity); psychomotor activity; affect; mood; thought process; thought content; perceptual disturbance; insight; and judgment.

incorporated Dr. Coleman's opinion that Plaintiff was "seriously limited, but not precluded" in her ability to work with or proximity to others without being unduly distracted (T. 638.) The ALJ's RFC determination reflects this limitation by limiting Plaintiff to an occupation which required only "brief, infrequent, and superficial contact with the public and only occasional contact with coworkers and supervisors" (T. 23.) The limitation was supported by Dr. Shapiro's observation that Plaintiff could interact "moderately well" with others. (T. 338.)

Therefore, the ALJ properly evaluated Dr. Coleman's opinion in accordance with the Regulations and did not err in noting the context in which his opinion was procured because it was but one factor in his overall analysis.

### B. Whether the ALJ Conducted a Proper Credibility Analysis.

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 12 at 6-11 [Def.'s Mem. of Law].) The Court adds the following analysis.

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (*quoting Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.* Further, "[i]t is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (*citing Carroll v. Sec'y of Health & Human Servs.,* 705 F.2d 638, 642 (2d Cir.1983)).

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible. (T. 24.) Plaintiff argues the ALJ failed in his credibility determination to properly analyze Plaintiff's activities of daily living and improperly relied on Plaintiff's non-compliance with prescribed treatment. (Dkt. No. 11 at 20-22 [Pl.'s Mem. of Law].)

11

Regarding activities of daily living, the ALJ determined that Plaintiff had only mild restrictions in this area, specifically noting that Plaintiff could drive, take care of her personal hygiene, care for her children, perform light housework, shop, and manage money. (T. 22.) Plaintiff argues this was in error, because the ALJ failed to acknowledge that these activities caused her fatigue. (Dkt. No. 11 at 21 [Pl.'s Mem. of Law].) However, the evidence in the record regarding Plaintiff's activities of daily living does not support Plaintiff's allegations that her symptoms were disabling. For example, the record indicates that despite her symptoms, Plaintiff was capable of performing activities of daily living. (T. 283, 331.) In 2010 Plaintiff indicated she stopped work due to lack of childcare, not due to her mental health symptoms. (T. 307.) In early 2011 Plaintiff reported that she was able to function and return to work after being weaned off medication for her anxiety and depression. (T. 303.) In June of 2011 Plaintiff was working and took her GED test. (T. 325, 327.) The ALJ properly reasoned that based on the record as a whole, evidence of Plaintiff's activities of daily living supported a higher level of functioning than reported by Plaintiff.

The ALJ also properly analyzed Plaintiff's non-compliance with medication and treatment. A plaintiff's statements:

> may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

SSR 96-7p, 1996 WL 374186 (1996). Here, the record was replete with notations that Plaintiff refused to take medication, primarily for fear that it would cause weight gain. (T.

314, 320, 322, 324, 330, 377, 397, 574, 578, 588, 592, and 603.) In March of 2012 Plaintiff's mental health provider confronted Plaintiff and questioned her regarding her refusal to take medication and make changes, but Plaintiff did not have an answer for her. (T. 592.)

A plaintiff may have a reason for not complying with medication and treatment, but a reason alone does not provide the plaintiff a "free pass" for non-compliance. SSR 96-7p cautions ALJs not to infer that a plaintiff's symptoms are not as severe as alleged without first considering any "good reasons" he or she may have for not following a treatment plan. The SSR provides examples of "good reasons" as: inability to afford treatment, treatment is contrary to a religious belief, or side effects are less tolerable than the symptoms. *See* SSR 96-7p.

Here, the ALJ properly complied with SSR 96-7p, because he took Plaintiff's non-compliance with treatment into consideration when analyzing her credibility; and further, he considered her reasoning for doing so. As directed by SSR 96-7p, the ALJ discussed Plaintiff's non-compliance with medication and her reasons for non-compliance. (T. 27.) The ALJ determined that Plaintiff's non-compliance, together with inconsistent statements, and the objective medical evidence as a whole which showed relatively normal mental health examinations, did not support Plaintiff's contention that her mental health symptoms were disabling. Therefore, because the ALJ properly assessed Plaintiff's activities of daily living and properly assessed Plaintiff's failure to follow prescribed treatment under SSR 96-7p, the ALJ did not err in his credibility analysis.

### C. Whether the ALJ's Step Five Determination was Supported by Substantial Evidence.

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 12 at 10-11 [Def.'s Mem. of Law].) The Court adds the following analysis.

Because we find no error in the ALJ's RFC assessment, specifically the ALJ's evaluation of Dr. Coleman's opinion, we likewise conclude that the ALJ did not err in posing a hypothetical question to the vocational expert that was based on that assessment. *See Dumas v. Schweiker,* 712 F.2d 1545, 1553–54 (2d Cir.1983) (approving a hypothetical question to a vocational expert that was based on substantial evidence in the record).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further is

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: September 15, 2015
Syracuse, NY

_____
Hon. Glenn T. Suddaby
Chief, U. S. District Judge